UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACINTO REYES SILVA, PANFILO
ESPINO BARROS, SALVADOR REYES
SILVA, SERGIO CANDIA, SIXTO
GALINDO, and VICTORIANO ROGELIO,
individually and on behalf of others similarly
situated,

                    Plaintiffs,

         - against –

LEGEND UPPER WEST LLC (d/b/a
LEGEND UPPER WEST), MIN XING
WANG, and DINGGEN WANG,

                    Defendants.

**ORDER**

16 Civ. 3552 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

This is an action for, inter alia, wages and overtime pay pursuant to the Fair Labor

Standards Act (the "FLSA") and the New York Labor Law (the "NYLL").  Defendants Legend

Upper West Side LLC, Min Xing Wang, and Dinggen Wang own Legend Upper West, a Chinese

restaurant located at West 109th Street in Manhattan.  (Trial Transcript ("Tr.") 9, 23)  Plaintiffs

Jacinto Reyes Silva, Salvador Reyes Silva, Sergio Candia, Sixto Galindo, and Victoriano

Regelio[1] all allege that they were employed by Defendants as delivery workers and/or

dishwashers; that they were not paid appropriate wages, overtime, and spread-of-hours pay; and

that they were forced to purchase "tools of the trade" at their own expense.  They also allege that

---

[1] On August 2, 2018, Plaintiff Panfilo Espinobarros informed the Court that he did not intend to
appear for trial.  (Tr. 2; Aug. 2, 2017 Pltf. Ltr. (Dkt. No. 87))  On August 8, 2018, Plaintiff
Espinobarros confirmed that he would not testify, and stated that he wished to withdraw his
claims.  (Aug. 8, 2018 Pltf. Ltr. (Dkt. No. 89))  His claims were dismissed that same day.  (Order
(Dkt. No. 90))

Defendants did not keep adequate records, and did not comply with wage notice and wage statement requirements. Plaintiffs seek back pay, spread-of-hours pay, liquidated damages, statutory damages, pre-judgment interest, and an award of attorneys' fees and costs.

Plaintiffs and pro se Defendant Min Xing Wang proceeded to trial before this Court on August 6, 2018. (Tr. 2)[2]

## FINDINGS OF FACT

## I.   DEFENDANT MIN XING WANG AND LEGEND UPPER WEST LLC

1.    Defendant Min Xing Wang ("Wang") owned 50 percent of Legend Upper West LLC. (Tr. 70-71) The remaining share was owned by co-defendant Dinggen Wang. (Tr. 71)

2.    Legend West LLC operated the Legend Upper West Chinese restaurant. (Tr. 70)

3.    Each year between 2013 and 2015, the Legend Upper West restaurant generated over $500,000 in gross revenue. (Tr. 71)

4.    Legend Upper West restaurant was engaged in commerce.

5.    Defendant Wang was known to Plaintiffs as "Bobby." (Tr. 13, 27, 34-35, 48, 52-53, 62)

6.    Defendant Wang was frequently present at the Legend Upper West restaurant. (Tr. 14 ("Bobby" was at the restaurant "all the time"); Tr. 27 ("[Bobby] would come . . . every day.")) He often delivered supplies to the restaurant, and assisted in packing food that would go out for delivery. (Tr. 14, 27, 48, 62)

7.    Although Plaintiffs saw Defendant Wang at the Legend Upper West restaurant, they had limited personal contact with him. (Tr. 21, 29, 39, 69)

---

[2] On April 16, 2018, Plaintiffs obtained a default judgment against corporate defendant Legend Upper West LLC and individual defendant Dinggen Wang. (Order of Default (Dkt. No. 77); Tr. 2)

8.    While the Legend Upper West's chef typically was responsible for paying Plaintiffs (<u>see</u> Tr. 27, 39, 41, 54), Defendant Wang occasionally paid Plaintiff Jacinto Reyes Silva.  (Tr. 42)

9.    Plaintiffs identified Legend Upper West's chef as "the manager" and as the "person in charge" (<u>see</u> Tr. 12, 14, 16, 62), as the person responsible for hiring them (Tr. 24, 31, 61), and as the person responsible for setting their work schedules.  (Tr. 31-32, 40)

10.   Defendant Wang hired the chef at Legend Upper West.  Defendant testified to that effect (<u>see</u> Tr. 71), and his subsequent retraction of that testimony (Tr. 72) is not credible.

11.   Defendant Wang was a "manager" who was "responsible for managing and supervising workers" at Legend Upper West.  (PX 3)

12.   Defendant Wang had decision-making authority with respect to Plaintiffs' employment (PX 3), including the power to hire and fire employees.  (Tr. 35, 71)  Wang's testimony to the contrary is not credible, as Plaintiffs' impeachment of Defendant Wang – using his inconsistent deposition testimony – demonstrated.

13.   Defendant Wang was responsible for determining pay compensation.  (PX 3)

14.   Defendant Wang was responsible for maintaining payroll records.  (PX 3)

## II.    PLAINTIFF JACINTO REYES SILVA

15.   Plaintiff Jacinto Reyes Silva ("J. Silva") worked continuously at Legend Upper West from August 2014 to May 2016 as a deliveryman; his responsibilities also included cleaning the restaurant.  (Tr. 34, 37)

16.   Pursuant to his official schedule, J. Silva was to work six days per week, from 11 a.m. to 11:00 p.m., from August 2014 to December 2014.  From January 2015 until his employment ended in May 2016, J. Silva was to work from 1:00 p.m. to 11:00 p.m. one

day per week, while still working from 11:00 a.m. to 11:00 p.m. five days per week.  (Tr. 24, 36)  J. Silva testified that he typically worked cleaning up in the restaurant until 11:20 p.m., however.  (Tr. 37)

17.   J. Silva never received a lunch break.  (Tr. 37)

18.   The Court finds that from August 2014 to December 2014, J. Silva worked approximately 74 hours per week; from January 2015 until May 2016, he worked approximately 72 hours per week.

19.   J. Silva was not required to track his hours.  (Tr. 38)

20.   J. Silva was paid $500 about every two weeks.  (Tr. 37 (testifying that he was paid $500 every fifteen days))

21.   J. Silva received his wages in cash.  (Tr. 37)

22.   J. Silva never received any pay stubs or other documentation along with his pay.  (Tr. 38)

23.   No one at Legend Upper West spoke with J. Silva about overtime pay, and he never received any overtime pay.  (Tr. 38, 42)

24.   J. Silva purchased three bicycles for his work at Legend Upper West.  The first bicycle cost $700; the second $500; and the third cost $600.  (Tr. 38)  He needed to purchase three bicycles because the first two were stolen while he was making deliveries.  (Tr. 38-39)

### III.   **PLAINTIFF SALVADOR REYES SILVA**

25.   Plaintiff Salvador Reyes Silva ("S. Silva") began working for Legend Upper West on November 20, 2013, and worked continuously through April 2016, as a deliveryman; he also had some cooking and cleaning responsibilities.  (Tr. 45)

26.     Throughout his employment at Legend Upper West, S. Silva worked six days per week

        from 11:00 a.m. to 11:00 p.m.  (Tr. 46)

27.     S. Silva never received a lunch break.  (Tr. 46)

28.     The Court concludes that S. Silva worked approximately 72 hours per week while at

        Legend Upper West.

29.     For his first two months at Legend Upper West in 2013, S. Silva was required to use a

        time clock to "punch in" and "punch out" of work when he arrived and when he left.  The

        time clock was suddenly removed, however, and thereafter S. Silva was not required to

        track his hours.  (Tr. 49, 58)

30.     S. Silva was paid $500 every two weeks.  (Tr. 46)

31.     S. Silva received this pay in cash.  (Tr. 46)

32.     S. Silva testified that a friend and fellow deliveryman, Manuel Basurto, hired him, and

        explained to him the above-described pay arrangement.  (Tr. 46-47)

33.     S. Silva never received any documents concerning his pay.  (Tr. 48, 54)

34.     S. Silva worked overtime hours, but never received overtime pay.  (Tr. 54)

35.     S. Silva bought two lights for his bicycle – for $80 and $60 – for which he was never

        reimbursed.  (Tr. 50)  He also purchased two bicycles.  He purchased the first bicycle for

        $700, so that he could start working at the restaurant.  After this bicycle was stolen, he

        purchased a second for $500.  (Tr. 51-52)  He also purchased a helmet for $45.  (Tr. 52)

        According to S. Silva, "Bobby" told him he had to buy his own bicycle in order to work

        for the restaurant.  (Tr. 57-58)

## IV.   **PLAINTIFF SERGIO CANDIA**

36.     Plaintiff Sergio Candia worked at Legend Upper West restaurant from March 2015 until May 2016, as a deliveryman, with additional responsibilities for cleaning.  (Tr. 9-10)

37.     Candia worked six days per week, from 11:00 a.m. to 11:00 p.m.  (Tr. 10)

38.     Candia never received a lunch break.  (Tr. 11)

39.     The Court finds that, throughout his employment at Legend Upper West, Candia worked approximately 72 hours per week.

40.     Candia was not required to record when he arrived at the restaurant for work and when he left.  (Tr. 11)

41.     Candia was paid $500 every two weeks.  (Tr. 11)

42.     Candia received his pay in cash.  He was paid by the restaurant's chef, who was also the restaurant's manager.  (Tr. 12, 16-17)

43.     Candia never received any documentation along with his pay.  (Tr. 12)

44.     Candia "not once" received overtime compensation for work over 40 hours per week. (Tr. 13)  No one at the restaurant ever discussed overtime pay with him, or explained his rate of pay.  (Tr. 12-13)

45.     Candia testified that "maybe" there was a sign in the restaurant – in a stairway leading to the basement – that gave notice of labor laws, but the sign "applie[d] to the people who worked in the kitchen . . . but not to [deliverymen]."  (Tr. 19)

46.     Candia purchased three bicycles and a helmet for his employment at Legend Upper West; the three bicycles were for making deliveries.  The first two were stolen.  (Tr. 14-15)  The first bicycle cost $200; the third, approximately $150.  Candia does not recall how much

the second bicycle cost.  (Tr. 15)  The helmet cost $60.  (Tr. 15)  Candia denied on cross-

examination that the restaurant provided a bicycle for use making deliveries.  (Tr. 16)

## V.   <u>**PLAINTIFF SIXTO GALINDO**</u>

47.   Plaintiff Sixto Galindo began working at Legend Upper West in June 2015; he worked

there until April 2016.  (Tr. 60-61)

48.   Galindo was a dishwasher.  On direct examination, he testified that he "would [also] take

deliveries," but on cross-examination, he testified that he did not make deliveries.  (Tr.

60, 65-66)

49.   Galindo never received a lunch break.  (Tr. 61)

50.   Galindo worked six days per week, from 11:00 a.m. to 11:00 p.m. each day.  (Tr. 61)

51.   The Court finds that, throughout his employment at Legend Upper West, Galindo worked

approximately 72 hours per week.

52.   Galindo was not required to track his hours.  (Tr. 62)

53.   Galindo was paid $1,000 every two weeks.  (Tr. 61)

54.   Galindo received his pay in cash.  (Tr. 62)

55.   Galindo never received any documents with his pay.  (Tr. 62)

56.   No one at Legend Upper West explained to Galindo why he was being paid the amounts

he was paid.  (Tr. 62)

57.   No one at Legend Upper West discussed overtime with Galindo, and he never received

overtime pay.  (Tr. 62, 68-69)

58.   Galindo purchased three aprons, for a total of $30, for his work at the restaurant.  (Tr. 63)

He was not directed to buy the aprons – rather, he wanted them to keep his normal

clothes from getting dirty.  (Tr. 63-64)

## VI.    **PLAINTIFF VICTORIANO ROGELIO**

59.    Plaintiff Victoriano Rogelio worked at Legend Upper West from August 2015 to February 2016 as a deliveryman; he also performed cleaning and shelving duties. (Tr. 23)

60.    Rogelio worked six days per week, from approximately 11:00 a.m. to 11:00 p.m.  (Tr. 24)

61.    Rogelio never received a lunch break.  (Tr. 24)

62.    The Court finds that, throughout his employment at Legend Upper West, Candia worked approximately 72 hours per week.

63.    Rogelio was not required to track his hours.  (Tr. 26)

64.    Rogelio was paid $500 every two weeks.  (Tr. 25)

65.    Rogelio received his pay in cash.  (Tr. 25)

66.    Rogelio never received any kind of document concerning his pay.  (Tr. 26, 32)

67.    No one at the restaurant ever discussed overtime with Rogelio, nor his rate of pay.  (Tr. 26)

68.    Rogelio bought two bicycles – for $200 and $170, respectively – as well as a helmet, bicycle lights and vests.  (Tr. 28-29)  The helmet cost $40; the lights cost $15 each; and the vest was $25.  (Tr. 29)  Rogelio showed the chef a receipt for the helmet, but "he said he wasn't going to pay for anything."  (Tr. 31)

## CONCLUSIONS OF LAW

The Amended Complaint asserts nine causes of action, all of which were pursued at trial:  (1) violation of the minimum wage provisions of the FLSA; (2) violation of the overtime provisions of the FLSA; (3) violation of the New York Minimum Wage Law; (4) violation of the overtime provisions of the NYLL; (5) violation of the spread of hours wage order of the New York Commissioner of Labor; (6) violation of the notice and recordkeeping requirements of the

NYLL; (7) violation of the wage statement provision of the NYLL; (8) recovery of equipment costs; and (9) violation of the unauthorized deduction provisions of the NYLL.  (See Am. Cmplt. (Dkt. No. 11))

## I.      FAIR LABOR STANDARDS ACT

The FLSA "embodies 'a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act.'"  Moon v. Kwon, 248 F. Supp. 2d 201, 227 (S.D.N.Y.2002) (quoting Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944); Reich v. New York City Transit Auth., 45 F.3d 646, 648 (2d Cir. 1995)).  To that end, the FLSA specifies that an employer must pay covered employees "a minimum hourly wage" of $7.25, see 29 U.S.C. 206(a)(1)(C), and must pay those who work in excess of forty hours during a workweek "at a rate not less than one and one-half the regular rate at which he is employed" for those excess hours.  29 U.S.C. § 207(a)(1); see also Moon, 248 F. Supp. 2d at 227 ("FLSA also requires employers to pay such employees at a premium rate 'not less than one and one-half times the regular rate at which he is employed' for any hours worked in excess of forty per week." (quoting 29 U.S.C. § 207(a)(1) and citing Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir.2002))).  Employers who violate these provisions are liable to the employees affected in the amount of their unpaid minimum wages and their unpaid overtime compensation.  Such employers are also liable for an additional equal amount in liquidated damages. 29 U.S.C. § 216(b).

### A.      Employer-Employee Relationship

"Employer" and "employee" are defined broadly under the FLSA.  29 U.S.C. § 203(d) defines an "employer" to include "any person acting directly or indirectly in the interest

of an employer in relation to an employee," while an "employee" is defined as any individual employed by an employer. 29 U.S.C. § 203(d), (e)(1).

"[T]he [Supreme] Court has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts." Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted). "[T]he Second Circuit has made clear 'that the various factors [it has] relied upon . . . [i] to examine the degree of formal control exercised over a worker, [ii] to distinguish between independent contractors and employees; and [iii] to assess whether an entity that lacked formal control nevertheless exercised functional control over a worker, state no rigid rule for the identification of an FLSA employer.'" Flores v. 201 W. 103 Corp., 256 F. Supp. 3d 433, 439 (S.D.N.Y. 2017) (citations omitted). "Rather, 'economic realities are assessed by reference to 'the particular situation[,]' with some factors more important than others depending on the FLSA question at issue and the context in which it arises.'" Id. (quoting Brown v. New York City Dep't of Educ., 755 F.3d 154, 167 (2d Cir. 2014)).

The Second Circuit has articulated an "economic reality" test to determine whether "the alleged employer possessed the power to control the workers in question." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). "[T]he relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Id. (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)).

Given the Court's findings that Defendant Wang was a "manager . . . responsible for managing and supervising workers" at Legend Upper West; that he was responsible for determining compensation and maintaining payroll records; and that he had decision-making authority as to Plaintiffs' employment, including the power to hire and fire (see Findings of Fact ¶¶ 11-14), the Court concludes that Defendant Wang was an "employer" within the meaning of the FLSA, and that Plaintiffs J. Silva, S. Silva, Sergio Candia, Sixto Galindo, and Victoriano Rogelio were all employed by him and Legend Upper West LLC during the periods each worked at Legend Upper West restaurant.

### B.      Minimum Wage and Overtime Violations

An employer and employee cannot agree to waive the minimum wage and overtime requirements of the FLSA.  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945).  A mistaken belief or misunderstanding of the law is not a valid defense to an FLSA claim.  Greenberg v. Arsenal Bldg. Corp., 144 F.2d 292, 294) (2d Cir.1944), rev'd on other grounds sub nom Brooklyn Sav. Bank, 324 U.S. 697.

An employee's regular rate of pay is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed."  Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945).  Under the FLSA, the regular rate of pay is typically determined by "dividing the employee's weekly compensation by the number of hours for which that compensation is intended."  Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 338 (S.D.N.Y. 2005) (quoting Moon, 248 F. Supp. 2d at 230).

Plaintiffs bear the burden of proving that they performed the work for which they were not compensated.  See Grochowski v. Phoenix Const., 318 F.3d 80, 87 (2d Cir. 2003).  However, "it is the employer's responsibility to maintain accurate records of an employee's

hours." Padilla v. Manlapaz, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009).  The law is well settled that an employer's failure to keep detailed records of an employee's wages, hours and other employment information, will not result in an employee's failure to collect damages.  See Reich v. S. New Eng. Telecomm. Corp., 121 F.3d 58, 69 (2d Cir. 1997).  "When an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only submit 'sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred,'" Gonzalez v. Masters Health Food Serv. Inc., No. 14-CV-07603 (VEC), 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quoting Reich, 121 F.3d at 66), and the Court "'may then award damages to the employee, even though the result may be only approximate.'"  Id. (quoting Reich, 121 F.3d at 66).  This principle applies to claims brought under the NYLL, as well.  Id. (quoting Canelas v. World Pizza Inc., No. 14 Civ. 7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017)).

As recited in this Court's Findings of Fact, Plaintiffs' testimony establishes that Defendant did not maintain accurate and complete records of the hours Plaintiffs worked.  (See Findings of Fact ¶¶ 19, 22, 29, 33, 40, 43, 52, 55, 63, 66)  Plaintiffs' testimony further establishes that each Plaintiff except Galindo was paid less than the federal minimum wage while working at Legend Upper West, and that all Plaintiffs worked well in excess of 40 hours per week.  (See Findings of Fact ¶¶ 18, 20, 28, 30, 39, 41, 51, 53, 62, 64)

Based on the evidence adduced at trial and the findings of fact set forth above, this Court concludes that Defendant Wang violated the FLSA by (1) failing to pay all Plaintiffs

except for Galindo the minimum wage; and (2) failing to pay overtime compensation to Plaintiffs for all hours worked in excess of 40 each workweek.[3]

## II.   NEW YORK LABOR LAW

### A.   Minimum Wage and Overtime

New York's Labor Law is the state analogue to the FLSA. Although the Labor Law "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales," it otherwise mirrors the FLSA as to the obligation to pay overtime compensation.  Chun Jie Yin v. Kim, CV 07–1236(DLI)(JO), 2008 U.S. Dist. LEXIS 118533, at *10; N.Y. Labor Law § 198; 12 N.Y.C.R.R. § 142–2.2 (an employer shall pay an employee for overtime at a wage rate of one and one-half the employee's regular rate in the manner and methods provided in the FLSA).  The NYLL also obliges employer to pay a minimum wage, but the rate of that minimum wage differs from the FLSA minimum wage; moreover, the NYLL minimum wage changed multiple times during the relevant time period. From November 20, 2013 – when Plaintiff S. Silva began working at Legend Upper West – to December 30, 2013, the New York minimum wage was $7.15 per hour.  From December 31, 2013 to December 30, 2014, the New York minimum wage was $8.00 per hour.  From December 31, 2014 to December 30, 2015, the New York minimum wage was $8.75 per hour.  And from

---

[3] The FLSA allows an employer to take a "tip credit" against the minimum wage requirements for a "tipped employee" provided:  (1) "such employee has been informed by the employer of the provisions of [the tip credit law]"; and (2) "all tips received . . . have been retained by the employee," or, if tips are pooled and shared among employees, the tips are shared only "among employees who customarily and regularly receive tips."  29 U.S.C. § 203(m).  Gonzalez v. Masters Health Food Serv. Inc., No. 14-CV-07603 (VEC), 2017 WL 3835960, at *15 (S.D.N.Y. July 27, 2017).  To be eligible to take the tip credit an employer must strictly comply with both statutory requirements; moreover, the employer bears the burden of demonstrating such compliance.  Id.  Here, Defendant has offered no evidence to demonstrate his entitlement to a "tip credit."  Indeed, there was no evidence at trial that Plaintiffs received tips.

December 31, 2015 to the end of Plaintiffs' employment, the minimum wage was $9.00 per hour.  See N.Y. Lab. Law § 652.

For the same reasons set forth above in connection with Plaintiffs' FLSA claims, the Court finds that Defendant violated the minimum wage and overtime requirements of the NYLL[4]

**B.     Spread-of-Hours Pay**

Pursuant to the NYLL – and unlike under the FLSA – employees "are entitled to an additional hour's pay at the basic minimum hourly wage rate for any day in which 'the spread of hours' – defined as 'the interval between the beginning and end of an employee's workday,' . . . exceeds 10 hours." Doo Nam Yang, 427 F. Supp. 2d at 339 (citations omitted).  "The measure of a workday . . . is the number of hours from the time the employee starts his work until he finishes, including both work time and non-working time." Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 319 (S.D.N.Y. 2014) (citing N.Y.C.R.R. tit. 12 §§ 142-2.4, 146-1.6).  An employee is entitled to "spread of hours" pay in addition to any claim for minimum wage or overtime.  Id.; Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 260 (S.D.N.Y. 2008).

As reflected in the Court's Findings of Fact, each Plaintiff's workday was longer than ten hours per day, six days per week.[5]  (See Findings of Fact ¶¶ 16, 26, 37, 50, 60)

---

[4]  While the New York minimum wage was less than the federal minimum wage for a short period during Plaintiff S. Silva's employment, he was paid at a substantially lower rate than that New York minimum wage.  At all other relevant times, the New York minimum wage was higher than the federal counterpart:  a violation of the FLSA minimum wage requirement is, de facto, a violation of the NYLL equivalent.

[5]  Although – one day per week starting in January 2015 – S. Silva's official workday was from 1:00 p.m. to 11:00 p.m., exactly ten hours, his testimony established that he worked twenty minutes longer than that, triggering the spread-of-hours provision.  (See Finding of Fact ¶ 16)

Accordingly, this Court concludes that, as to all Plaintiffs, Defendant violated the spread-of-hours provision of the NYLL by failing to pay Plaintiffs an additional hour at the minimum wage for workdays longer than ten hours.

### C.     Notice and Recordkeeping Requirements and Wage Statement Provisions of the NYLL

The NYLL requires every employer to provide employees – at the time of hiring – with, inter alia, a notice containing . . . the rate or rates of pay and basis thereof; . . . allowances, if any, claimed as part of the minimum wage . . . ; [and] the regular pay day designated by the employer"; the employer must also "obtain from the employee a sign and dated written acknowledgement . . . of receipt of this notice," and "preserve and maintain" that notice for six years.  N.Y. Lab. Law § 195(1).

The NYLL also requires that employers "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof . . . ; [and] gross wages; deductions; [and] allowances." The statement must also include "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked." N.Y. Lab. Law § 195(3).

As noted in this Court's Findings of Fact, neither Defendant Wang nor anyone else associated with Legend Upper West LLC provided Plaintiffs with the notice required under N.Y. Lab. Law § 195(1),[6] or the wage statements required under N.Y. Lab. Law § 195(3).  (See Findings of Fact ¶¶ 22-23, 33, 43-44, 55-57, 66-67)  Accordingly, the Court concludes that

---

[6] While S. Silva testified that a friend and fellow deliveryman explained to him the pay arrangement (Finding of Fact ¶ 32), this does not meet the requirements of the NYLL.

Defendant violated the NYLL's notice and recordkeeping requirements, and violated its wage statement provision.

        **D.**    <u>**Recovery of Equipment Costs**</u>

        An employer violates the NYLL if the employer "requires an employee to purchase 'tools of the trade which will be used in or are specifically required for performance of the employer's particular work' and 'the cost of such tools . . . cuts into the minimum or overtime wages required to be paid to [the employee].'" <u>Hernandez v. Jrpac Inc.</u>, No. 14 CIV. 4176 (PAE), 2016 WL 3248493, at *30 (S.D.N.Y. June 9, 2016) (reciting rule for FLSA tools-of-the trade claims, and noting that "[t]he same is true under New York law") (quoting <u>Salinas v. Starjem Rest. Corp.</u>, 123 F. Supp. 3d 442, 465 (S.D.N.Y. 2015)).

        Plaintiffs J. Silva, S. Silva, Candia, and Rogelio all purchased bicycles for making deliveries; S. Silva, Candia, and Rogelio also purchased helmets, S. Silva and Rogelio purchased bicycle lights, and Rogelio additionally purchased a vest. (Findings of Fact ¶¶ 24, 35, 46, 68) Plaintiff Galindo purchased three aprons. (Findings of Fact ¶ 58)

        The Court concludes that Plaintiffs may recover the cost of the bicycles, helmets, bicycle lights, and vest, but that Galindo may not recover the cost of the aprons he purchased. Galindo testified that he was not directed to purchase the aprons, but instead wanted them to keep his clothes from getting dirty. The aprons do not qualify as "tools of the trade" or "equipment costs" recoverable under the NYLL. <u>See</u> <u>Hernandez</u>, 2016 WL 3248493, at *30-31 (finding defendants liable to delivery workers for costs associated with the purchase of the workers' bicycles, helmets, reflective vests, and bicycle lights, but determining that defendants were not liable for the cost of, <u>inter</u> <u>alia</u>, a plaintiff's raincoat, as it "was not a required piece of equipment," but instead "primarily for [the plaintiff's] own benefit and not defendants'").

E.   **Unauthorized Deductions Provisions of the NYLL**

Section 193 of the NYLL prohibits employers from "mak[ing] any deduction from the wages of an employee," except for a statutorily-specified list of acceptable deductions. N.Y. Lab. Law § 193.  Plaintiffs offered no evidence of unlawful deductions at trial, however. Accordingly, the Court concludes that Defendant is not liable for violating Section 193 of the NYLL.

III.   **DAMAGES**

A.   **Statute of Limitations**

"In general, the statute of limitations for bringing an FLSA suit is two years . . . ."  29 U.S.C. § 255(a).  In the case of a "'willful violation,' however, the statute of limitations is extended to three years."  Doo Nam Yang, 427 F. Supp. 2d at 337 (citing Acosta, 1995 WL 600873, at *3).

The Supreme Court has instructed that a violation is willful if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); see also Brock v. Superior Care, Inc., 840 F.2d 1054, 1062 (2d Cir. 1988) (defendant's violations were willful where it was on actual notice of FLSA requirements due to earlier violations); Galeana, 120 F. Supp. 3d at 315 (finding defendants' FLSA violation willful where plaintiffs "repeatedly notified the individual defendant that they were not receiving appropriate minimum wages or overtime pay, and never received any response to such complaints"); Doo Nam Yang, 427 F. Supp. 2d at 337-38 (finding defendants' FLSA violation willful where employer "repeatedly stated that he knew that he was required to pay the overtime premium for all hours worked in excess of 40 per week"); Moon, 248 F. Supp. 2d at 231 (finding that defendant's knowing violations of FLSA and

17

NYLL recordkeeping requirements amounted to willfulness for purposes of FLSA); <u>Donovan v. Kaszycki & Sons Contractors, Inc.</u>, 599 F. Supp. 860, 870 (S.D.N.Y. 1984) (defendants found to have acted willfully where they had complied with FLSA obligations as to union employees). <u>But</u> <u>see</u> <u>Juarez-Cardoso v. La Flor de Santa Ines, Inc.</u>, No. 15 CIV. 6671 (VMS), 2017 WL 4357009, at *12 (E.D.N.Y. Sept. 29, 2017) (finding that plaintiff failed to show defendants' willfulness where plaintiff had not offered evidence that defendants were on notice that they were subject to the FLSA).

Here, Plaintiffs contend that they are entitled to a three-year limitations period under the FLSA, which they assert runs from "April 26, 2010, three years before the complaint was filed." (Pltfs. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 92) ¶ 18)  The Complaint was not filed until May 12, 2016, however.  Accordingly, the three-year limitations period would date back to May 12, 2013, encompassing all five Plaintiffs' employment periods. Plaintiffs argue that Defendant made the "deliberate decision to disregard both the FLSA and New York law" and failed to take "any affirmative step[s] towards compliance, amount[ing] to willfulness for purposes of the FLSA and New York law." (<u>Id.</u> ¶ 17)

The trial record contains only limited evidence of willfulness.  Plaintiff S. Silva testified that, when he commenced working at the restaurant, he punched in and out using a time-clock.  Someone – S. Silva conceded that he did not know who – removed the time clock.  (Tr. 58)  Plaintiff Rogelio testified that he was fired after he received payments late, and "demanded they pay me on time." (Tr. 32)  Plaintiff Galindo testified that he "told the chef it was too many hours" and asked for a raise, after which he was fired.  (Tr. 69)  Defendant Wang was responsible for "issuing and authorizing weekly paychecks, and maintaining payroll records" and "determining the Plaintiffs' compensation, including the regular rate of pay, overtime rate of pay,

bonuses, benefits, and pay raises."  (PX 3)  Finally, Defendant did not maintain records regarding work hours and compensation.

The Court concludes that this evidence is insufficient to demonstrate that Defendant Wang either knew or recklessly disregarded the FLSA's requirements.  Unlike in other cases finding willfulness, Plaintiffs have offered no evidence that they notified Defendant that they were entitled to minimum wage and overtime pay, and there was almost no evidence suggesting that Defendant Wang knew what the law required.  "[T]he assembled evidence is more consistent with the conclusion that . . . [D]efendants were ignorant and incurious as opposed to willfully non-compliant with federal law."  Hernandez, 2016 WL 3248493, at *18 (finding that plaintiffs failed to demonstrate willfulness where plaintiffs "provided no evidence bearing on defendants' state of mind with respect to the legality of the restaurant's pay practices," and "did not adduce any evidence that any of the defendants had prior experiences that would have sensitized them to the obligations of the FLSA," even though "defendants' wholesale failure to maintain records of hours worked by plaintiffs may be argued to indicate reckless disregard. . . .").

Accordingly, a two-year statute of limitations period – dating back to May 12, 2014 – applies.

The NYLL has a six-year statute of limitations.  The statute of limitations does not bar any of Plaintiffs' NYLL claims.

**B.**   **Damage Calculations**[7]

    **1.**   **Unpaid Wages and Overtime**

As an initial matter, "Plaintiffs . . . may not receive a 'double recovery' of back wages under both the FLSA and NYLL." Hernandez, 2016 WL 3248493, at *31 (quoting Gen. Tel. Co. of the Nw. v. EEOC, 446 U.S. 318, 333 (1980)). As demonstrated in the calculations set forth below, the NYLL claims will "necessarily . . . subsume [Plaintiffs'] award under the FLSA, both because of the higher minimum wage that governed . . . and because of the longer period covered by the NYLL." Id.

The Court begins the calculation by determining Plaintiffs' "regular rate" of pay. "Under the FLSA, [t]he regular rate is the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed, and is calculated by dividing the employee's weekly compensation by the number of hours for which that compensation is intended." Id. at *32 (internal quotation marks and citation omitted). "Under the NYLL, the Court divides the pay the plaintiff in question actually received by the lesser of 40 hours or the actual number of hours he worked during the work week." Id. (citing 12 N.Y.C.R.R. § 146-3.5). "There is a rebuttable presumption that an employee's fixed weekly salary covers 40 hours worked." Id. (citing Giles v. City of New York, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999). Because Plaintiffs were all paid a fixed weekly salary, their regular pay should be calculated by dividing their salaries by 40 hours. Id.

The calculated "regular rate" of pay for Plaintiffs J. Silva, S. Silva, Candia, and Rogelio is $6.25. The calculated "regular rate" of pay for Plaintiff Galindo is $12.50.

---

[7] A spreadsheet reflecting the Court's calculations is appended to this order.

The overtime rate is computed by using a multiplier of one and half times the regular rate of pay.  See 29 U.S.C. § 207; 12 N.Y.C.R.R. § 146-1.4.  The overtime rate of pay for Plaintiffs J. Silva, S. Silva, Candia, and Rogelio is $9.38.  The "overtime rate" of pay for Plaintiff Galindo is $18.75.

However, "[t]he regular rate of pay at which the employee is employed may in no event be less than the statutory minimum."  29 C.F.R. 778.107.  Moreover, "[w]here a higher minimum wage than that set in the [FLSA] is applicable to an employee by virtue of . . . other legislation, the regular rate of the employee . . . cannot be lower than such applicable minimum . . . ."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 291 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).  For all Plaintiffs except for Plaintiff Galindo, the "regular rate" applied, and from which the overtime rate is calculated, is the highest applicable statutory minimum wage.  In this case, the highest applicable statutory minimum wage is the New York minimum wage.[8]

The Court must next calculate the lawful weekly pay each Plaintiff should have received.  For all Plaintiffs except Galindo,[9] the lawful weekly pay is calculated as:
(40 hours x [New York minimum wage]) + ([Hours worked per week] – 40) x [New York minimum overtime wage])

The Court then subtracts the amount each Plaintiff was actually paid per week from the lawful weekly pay.  The resulting figure constitutes the minimum and overtime wages per week each Plaintiff is owed.[10]

---

[8]  Although the federal minimum wage was higher than the New York minimum wage in 2013, any 2013 claims in this case are time-barred.

[9]  For Plaintiff Galindo, the lawful weekly pay formula is (40 x $12.5) + (32 x $18.75) = $1100.

[10]  For example, most of the Plaintiffs worked 72 hours per week for the duration of their employment.  During 2014, New York's minimum wage was $8.75, and its minimum overtime

The Court then multiples that figure by the number of weeks each Plaintiff worked while that minimum wage was in effect.[11]  The Court repeats this analysis for each applicable period during which a different minimum wage governed.

The Court finds that

Plaintiff J. Silva is owed $46,906.32 in unpaid wages and overtime.

Plaintiff S. Silva is owed $61,061.52 in unpaid wages and overtime.

Plaintiff Candia is owed $31,624.56 in unpaid wages and overtime.

Plaintiff Galindo is owed $25,800 in unpaid wages and overtime.

Plaintiff Victoriano Rogelio is owed $14,197.20 in unpaid wages and overtime.

## 2.    <u>Spread of Hours Damages</u>

Each Plaintiff worked six spread-of-hours days – that is, six days for which the workday was longer than ten hours – per week.

For each Plaintiff, the Court calculates spread-of-hours damages as follows:

(6 x [applicable New York minimum wage] x [number of weeks worked])

The Court finds:

Plaintiff J. Silva is owed $4,716 in unpaid spread-of-hours pay.

Plaintiff S. Silva is owed $6,297 in unpaid spread-of-hours pay.

Plaintiff Candia is owed $3,178.50 in unpaid spread-of-hours pay.

Plaintiff Galindo is owed $2,280 in unpaid spread-of-hours pay.

---

wage was 1.5 times that amount, $13.13.  Plaintiffs' lawful weekly wage during the year 2014 is: (40 x $8.75) + ([72-40] x $13.13) = $770.16.  Most of the Plaintiffs were paid $250 per week. Accordingly, the wages owed these Plaintiffs are $520.16 per week for the period during which the New York minimum wage was $8.75.

[11] Several Plaintiffs testified as to the month, but not the specific date, they began and ended their employment with Legend Upper West.  The Court calculates their damages beginning on the 15th day of the month they began working, and ending on the 15th day of the month they ceased working.  <u>See</u> <u>Hernandez</u>, 2016 WL 3248493, at *33 (applying the same methodology).

Plaintiff Rogelio is owed $1,428 in unpaid spread-of-hours pay.

### 3. Liquidated Damages

Employers who violate the FLSA's minimum wage or overtime provisions "shall be liable" not only in the amount of their unpaid wages and overtime, but also "in an additional equal amount as liquidated damages." An employer can avoid liability, however, if the employer establishes, by "plain and substantial evidence," that he acted in good faith and had reasonable grounds for believing his actions did not violation the FLSA. See 29 U.S.C. § 260. "To establish the requisite subjective 'good faith,' an employer must show that it took active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." Gonzalez v. Masters Health Food Serv. Inc., No. 14-CV-07603 (VEC), 2017 WL 3835960, at *18 (S.D.N.Y. July 27, 2017) (internal quotation marks and citations omitted).

Similarly, the NYLL provides for liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law §§ 198(1-a), 663(1). "[C]ourts have not substantively distinguished between the federal standard from the [NYLL] standard of good faith." Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015). Here, Defendant Wang has made no effort to demonstrate that he acted in good faith with respect to his violations of the NYLL and the FLSA. Defendant is therefore liable to Plaintiffs for liquidated damages.

Since passage of the Wage Theft Prevention Act, which went into effect in 2011, Plaintiffs may recover 100 percent of total unpaid wages and spread-of-hours pay as liquidated damages. Gonzalez, 2017 WL 3835960, at *18. Because "the NYLL and FLSA liquidated damages are identical in all material respects, serve the same functions, and redress the same injuries," Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 61 (2d Cir. 2016),

"'[s]tacked' or overlapping liquidated damages awards under [both statutes] are generally not available for the same injury or violation."  <u>Gonzalez</u>, 2017 WL 3835960, at *19.  Accordingly, the larger liquidated damage award under the NYLL – consisting of 100 percent of the unpaid wages and overtime compensation calculated above, and 100% of the unpaid spread-of-hours pay calculated above – provides the measure of the liquidated damages award.

The Court finds that

Plaintiff J. Silva is owed $51,622.31 in liquidated damages.

Plaintiff S. Silva is owed $67,411.32 in liquidated damages.

Plaintiff Candia is owed $34,803.06 in liquidated damages.

Plaintiff Galindo is owed $28,080 in liquidated damages.

Plaintiff Rogelio is owed $15,625.20 in liquidated damages.

### 4.       <u>Statutory Damages for Wage Notice and Wage Statement Violations</u>

Prior to February 27, 2015, employees who did not receive wage notices could recover as damages $50 for each week the violations occurred or continued, capped at $2,500. Those employees who did not receive wage statements could recover $100 for each week of the violations, also capped at $2,500.  After February 27, 2015, the available damages were increased to $50 per workday, capped at $5,000, for wage notice violations, and $250 per workday, capped at $5,000, for wage statement violations.  <u>Garcia v. Saigon Mkt. LLC</u>, No. 15-CV-9433 (VSB), 2019 WL 4640260, at *4 (S.D.N.Y. Sept. 24, 2019) (citations omitted). Although many of the wage notice and wage statement violations in this case took place prior to February 27, 2015, these violations – as to each Plaintiff – continued after February 27, 2015. All Plaintiffs worked into 2016 long enough to reach the new statutory caps.

24

Accordingly, the Court finds that each Plaintiff is owed $5,000 in damages for Defendant's violation of the wage notice provision of the NYLL, and $5,000 in damages for Defendant's violation of the wage statement provision of the NYLL.

### 5.  Recovery of Equipment Costs

As noted above, Plaintiffs are entitled to the costs of the bicycles, helmets, bicycle lights, and a vest purchased for deliveries.

The Court finds that

Plaintiff J. Silva is owed $1,800 for the three bicycles he purchased.

Plaintiff S. Silva is owed $1,385 for the two bicycles, lights, and helmet he purchased.

Plaintiff Candia is owed $410 for the three bicycles and helmet he purchased.

Plaintiff Rogelio is owed $450 for the two bicycles, helmet, lights, and vest he purchased.

### 6.  Pre-judgment Interest

Plaintiffs are entitled to prejudgment interest for violations of the NYLL. Gonzalez, 2017 WL 3835960, at *19 (citing N.Y. C.P.L.R. § 5001(a); N.Y. Lab. Law § 663(1); Reilly v. NatWest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999)).  **Plaintiffs will provide the Court with a proposed calculation of the appropriate pre-judgment interest no later than September 17, 2021.  Any response by Defendant is to be filed by September 23, 2021.**

### 7.  Attorneys' Fees and Costs

Under both the FLSA and the NYLL, prevailing plaintiffs are entitled to an award of reasonable attorneys' fees and costs.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).

**Plaintiffs will provide the Court with a proposed fee application by September 17, 2021. Any response by Defendant is to be filed by September 23, 2021.**

## <u>CONLCUSION</u>

For the reasons stated below, the Court finds in favor of Plaintiffs as to all claims except for the claim for violation of the unauthorized deduction provisions of the NYLL.

Defendant Wang is liable for $449,076 in damages, owed to Plaintiffs in the following amounts:  (1) $115,044.64 to Plaintiff J. Silva; (2) $146,154.84 to Plaintiff S. Silva; (3) $80,016.12 to Plaintiff Candia; (4) $66,160 to Plaintiff Galindo; and (5) $41,700.40 to Plaintiff Rogelio.

Plaintiffs and Defendant will address pre-judgment interest and attorneys' fees and costs on the schedule set forth above.

Dated:      New York, New York
            September 13, 2021

SO ORDERED.

Paul G. Gardephe
United States District Judge